UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                Plaintiff,

      v.

GERALD R. CHAMBERLIN,

                Defendant.

REPORT & RECOMMENDATION

09-CR-6169CJS

---

## PRELIMINARY STATEMENT

By Order of Hon. Charles J. Siragusa, United States District Judge, dated September 10, 2009, all pretrial matters in the above-captioned case have been referred to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B). (Docket # 11).

Defendant Gerald R. Chamberlin ("Chamberlin") is charged in a single-count indictment with possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). (Docket # 10). Currently pending before this Court are motions by Chamberlin to dismiss the indictment and to suppress physical evidence seized from his residence and statements that he made to law enforcement agents. (Docket ## 15, 25). The government opposes Chamberlin's motions. (Docket ## 16, 26).[1]

---

[1] Chamberlin's omnibus motion also sought, *inter alia*, an audibility hearing, a bill of particulars, *Brady* material, discovery and inspection, rulings on evidentiary matters under Rules 404 and 609 of the Federal Rules of Evidence, identification of informants, leave to join motions of co-defendants, *Jencks* material, disclosure of witnesses' criminal records, disclosure of scientific and technical materials, a hearing as to the reliability of expert testimony, and preliminary sentencing report calculations. (Docket # 15). Each of these requests was either resolved by the parties or decided in open court by the undersigned on December 10, 2009. (Docket # 18).

The following constitutes this Court's recommendation with respect to Chamberlin's motions.

**FACTUAL BACKGROUND**

On December 11, 2008, agents of the Federal Bureau of Investigation ("FBI") executed a search warrant at 10 Cottage Street, Apartment 1, in Dansville, New York. An evidentiary hearing was held on February 22, 2010 concerning the circumstances under which Chamberlin made statements to the agents during the execution of the warrant. (Docket # 23).[2]

**I. Search Warrant for 10 Cottage Street, Apartment 1, Dansville, New York**

On December 5, 2008, the undersigned authorized a search of 10 Cottage Street, Apartment 1, in Dansville, New York for, *inter alia*, "[i]mages of child pornography and files containing images of child pornography in any form wherever it may be stored or found." (Docket # 15 at 63, 70). The search warrant application was based upon an affidavit by FBI Special Agent David A. Knight ("Knight"), sworn to on December 5, 2008, describing the investigation that led Knight to conclude that evidence of child pornography would be located at 10 Cottage Street, Apartment 1. ("Knight Aff.").[3]

According to Knight's affidavit, in August 2007, FBI agents identified the website http://first.visiblelight.info/afv ("Visiblelight website") as a website that was hosting and selling

---

[2] The transcript of the February 22, 2010 evidentiary hearing will be referred to herein as "Tr."

[3] Neither party has submitted a copy of Knight's affidavit in connection with this motion. This Court has nonetheless obtained and reviewed a copy of the underlying search warrant application, and it will be referred to herein as "Knight Aff."

images and videos of child pornography. (Knight Aff. at ¶¶ 6-10). The investigation revealed that the Visiblelight website's IP address was assigned to a customer of ISP New Dream Network, LLC ("New Dream Network"). (*Id.* at ¶ 6). In September 2007, an undercover FBI agent sent an email to an address provided on the Visiblelight website to inquire about purchasing two videos containing child pornography. (*Id.* at ¶¶ 11-12). In response, on September 4, 2007, the undercover agent received an email containing purchasing instructions, as well as six links to samples of videos containing child pornography. (*Id.* at ¶ 12). Agents viewed five of the six sample videos provided by the links; according to Knight's affidavit, each video either depicted a minor female having sexual intercourse with or performing fellatio on adult men. (*Id.* at ¶ 13). On September 11, 2007, the undercover agent submitted payment for two videos to be shipped to him. (*Id.* at ¶ 14).

Further investigation revealed that the IP address that hosted the six links of sample videos corresponded to the website http://sublimdirhot.dreamhosters.com ("Dreamhosters website"), which was operated by the same customer of New Dream Network that operated the Visiblelight website. (*Id.* at ¶ 17). New Dream Network had assigned the same account identifier, "FORFAN," to the operator of both websites. (*Id.*).

On December 14, 2007, a United States magistrate judge in the District of New Jersey issued a pen register and trap and trace order to monitor the "source IP addresses, dates, and times of visits and connections directed to" the Visiblelight and Dreamhosters websites. (*Id.* at ¶ 18). The records obtained pursuant to the order revealed that additional websites containing images of child pornography were being operated under the IP addresses for the Visiblelight and Dreamhosters websites. (*Id.* at ¶¶ 19-21). On January 9, 2008, a federal search warrant was

3

issued authorizing the seizure of records from New Dream Network relating to the Visiblelight and Dreamhosters websites, including records relating to the content of those websites, connection logs and records of user activity for the "FORFAN" account. (*Id*. at ¶ 22). The records seized pursuant to the warrant included documents relating to approximately thirty webpages containing images of child pornography that were hosted by the two websites. (*Id*. at ¶ 23).

       Records obtained as a result of the pen register and trap and trace order revealed that an individual using the IP address of 65.37.37.132 had viewed images of child pornography through the Visiblelight and Dreamhosters websites during the period December 9, 2007 through February 8, 2008. (*Id*. at ¶¶ 25-26). Some of the files were accessed by that IP address on multiple occasions. (*Id.* at ¶ 27). The images accessed included images of nude, prepubescent females exposing their genitalia. (*Id*. at ¶ 27). One image, viewed on December 9, 2007 at 6:13:30 and again on February 6, 2008 at 7:16:11, depicted a young child inserting an object into the vagina of an adult female. (*Id*.). Knight concluded that the fact that the user viewed several "thumbnail" images at the same time and accessed them several times indicated that the user intended to download the images. (*Id*. at ¶ 28). Knight further opined that individuals who "receive and attempt to receive child pornography often possess and maintain their 'hard copies' of child pornographic material . . . in the privacy and security of their home." (*Id*. at ¶ 33(c)).

       On March 11, 2008, FBI agents subpoenaed subscriber and billing information for IP address 65.37.37.132. (*Id*. at ¶ 29). That information revealed that the address was assigned to internet service provided to Gerald Chamberlin at 10 Cottage Street, Apartment 1, Dansville, New York. (*Id*.). In addition, information obtained from the New York State Department of

Motor Vehicles confirmed that Gerald Chamberlin listed 10 Cottage Street, Apartment 1, Dansville, New York as his mailing address. (*Id*. at ¶ 31). Surveillance also revealed that a vehicle parked in the driveway at 10 Cottage Street was registered to Gerald Chamberlin at the same address. (*Id*. at ¶ 32).

FBI agents executed the search warrant for 10 Cottage Street, Apartment 1 on December 11, 2008, and seized an HP Pavilion desktop computer. (Docket # 1 at ¶ 6). Forensic examination of the HP computer seized revealed over one hundred images of alleged child pornography. (*Id*. at ¶ 7). Chamberlin now moves to suppress that evidence.

In support of his motion, Chamberlin has submitted an expert report prepared by Tami L. Loehrs ("Loehrs") of Loehrs & Associates, LLC, a computer forensic company located in Tuscon, Arizona. (Docket # 15). Loehrs is a licensed private investigator and computer forensic examiner, who conducted a forensic examination of the HP Pavilion desktop computer. (Docket # 15 at 88). In her report, Loehrs explains that an IP address is

> not associated with a person, but rather a router or modem used to connect to the internet. Because the IP address is assigned to the router, any computer that accesses the Internet from that router will use the same IP address. And, if that router has wireless capabilities, anyone within range of the wireless signal can access the Internet using that router and that IP address.

(*Id*.). Loehrs concludes that evidence that child pornography was viewed by or downloaded to the IP address associated with Chamberlin does not prove that Chamberlin himself viewed those images. Instead, she opines that someone other than Chamberlin could have used his IP address by connecting directly to his modem or by gaining access to his router assuming it had wireless capabilities. (*Id*. at 88-89).

## II. Statements Made During the Execution of the Warrant at 10 Cottage Street

At the evidentiary hearing held on February 22, 2010, FBI Special Agent Barry Couch ("Couch") testified that the FBI began investigating Chamberlin approximately six months before the warrant was executed at his residence. (Tr. 19). The warrant was executed on December 11, 2008, by a team of eight law enforcement officers including Couch and Knight and the Chief of the Dansville, New York police department. (Tr. 7). Couch testified that at the time the search warrant was executed, the FBI regarded Chamberlin as a suspect in their investigation of child pornography offenses. (Tr. 21, 23).

Couch testified that at approximately 8:00 a.m., Agent Knight knocked on the door of Apartment 1 at 10 Cottage Street and announced the FBI's presence. (Tr. 8, 25). Chamberlin answered the door a few moments later. (Tr. 8, 9, 10, 25). Knight identified himself and advised Chamberlin that they were there to execute a federal search warrant. (Tr. 9, 25). Couch was wearing a bullet proof vest bearing the initials "FBI" and was armed, although his firearm was concealed by his jacket. (Tr. 8, 24-25). Couch did not recall that he or any other agent withdrew his firearm at any time during the search. (Tr. 8-9).

Couch and Knight accompanied Chamberlin inside the apartment to his kitchen, while the other agents commenced the search. (Tr. 10). The kitchen was located directly to the right of the front door to the apartment. (*Id.*). Couch and Knight sat in chairs next to each other facing the front door, while Chamberlin sat in a chair with his back to the door at a distance of approximately three to four feet from the agents. (Tr. 11, 29). Knight advised Chamberlin that he was not under arrest, had no obligation to answer questions or to talk to the agents and could leave at any time. (Tr. 11, 29-30). Couch testified that Chamberlin responded by "nodd[ing] his

6

head and either said 'yeah' or 'yes'." (Tr. 11, 30). Chamberlin did not ask any questions at that time, nor did he request an attorney. (Tr. 12-13). Chamberlin was not provided *Miranda* warnings and was not handcuffed. (Tr. 13, 23).

Knight then questioned Chamberlin for a period of approximately thirty to forty-five minutes. (Tr. 11, 13, 30). Couch testified that no threats or promises were made to Chamberlin during the interview. (Tr. 11-12, 13). Couch further testified that Chamberlin demonstrated that he understood English and did not appear to be under the influence of drugs or alcohol. (Tr. 12). Couch observed that although Chamberlin appeared tired at the beginning of the interview, he "seemed to get less tired as we talked." (Tr. 14). Chamberlin answered the agents' questions in a straightforward manner, except for one question that Chamberlin declined to answer. (*Id.*). After the completion of the interview and search, the agents provided Chamberlin with a copy of the warrant and left his residence. (Tr. 15-16). After the FBI agents left, the Chief of Police remained to speak to Chamberlin. (Tr. 15). No testimony was elicited concerning their conversation, and the government apparently does not seek to introduce into evidence any statements made by Chamberlin to the police chief. Chamberlin was not arrested on December 11, 2008. (Tr. 16).

Chamberlin has submitted an affidavit in connection with this motion in which he affirms that had he known that he was a suspect in the FBI's investigation, he would not have answered the agents' questions and would have requested an attorney. (Docket # 19). Chamberlin further states that had he been provided with *Miranda* warnings before the interview, he would have declined to speak to the agents. (*Id.*).

# DISCUSSION

## I. Motions to Dismiss Indictment

Chamberlin moves to dismiss the indictment against him on several grounds. Each is addressed in turn.

### A. Improper Grand Jury Instructions

Chamberlin asserts in conclusory fashion that dismissal is warranted based upon allegedly improper grand jury instructions. (Docket # 15 at ¶¶ 96-103). For the reasons stated below, I recommend denial of this motion.

"[T]here is no requirement that federal grand jurors be instructed on the law." *United States v. Hernandez*, 2001 WL 1344832, *17 (W.D.N.Y.) (citing *United States v. Zangger*, 848 F.2d 923, 925 (8th Cir. 1988)), *adopted by*, 2001 WL 1705118 (W.D.N.Y. 2001), *aff'd*, 63 F. App'x 6 (2d Cir. 2003). Moreover, Chamberlin's motion is based upon nothing more than the speculative assertion that the grand jury was improperly instructed. Speculation is wholly insufficient to overcome the rule of secrecy in grand jury proceedings that is embodied in Fed. R. Crim. P. 6(e). *See, e.g.*, *United States v. Jailall*, 2000 WL 1368055, *2 (S.D.N.Y. 2000) (the rule of secrecy, which can only be overcome by a showing by the defendant that grounds exist to dismiss the indictment based upon matters that occurred in the grand jury, applies to legal instructions provided to the grand jury); *United States v. Olin Corp.*, 465 F. Supp. 1120, 1134-35 (W.D.N.Y. 1979) (mere conjecture that some irregularities occurred in the grand jury does not "justify disturbing the secrecy of [the grand jury's] proceedings"). Accordingly, I find that Chamberlin's assertions warrant neither disclosure of grand jury minutes, nor dismissal of the indictment.

### B. Insufficiency

Chamberlin also moves to dismiss the indictment on the basis that it is insufficient, although he does not identify any alleged deficiencies in the indictment. (Docket # 15 at ¶¶ 123-25). The indictment against Chamberlin charges that he:

> did knowingly possess material, that is a Hewlett Packard Pavilion Desktop Computer bearing serial number MX23725130, and which was produced in Mexico, that contained images of child pornography, as defined by Title 18, United States Code, Sections 2256(8)(A) and (B), that had been transported in interstate and foreign commerce by computer, and that had been produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce by any means.

(Docket # 10).

It is well-established that an indictment that is valid on its face cannot be dismissed on the grounds that it is based on inadequate or insufficient evidence. *United States v. Williams*, 504 U.S. 36, 54 (1992); *United States v. Calandra*, 414 U.S. 338, 345 (1974); *United States v. Casamento*, 887 F.2d 1141, 1182 (2d Cir. 1989), *cert. denied*, 493 U.S. 1081 (1990). Instead, the time to advance such a motion is after the government has presented its case at trial. *See*, *e.g.*, *United States v. Gambino*, 809 F. Supp. 1061, 1079 (S.D.N.Y. 1992); Fed. R. Crim. P. 29(a). Applying the above-cited authority, I find that Chamberlin's motion to dismiss is premature and should be made following the government's presentation of proof at trial. I thus recommend denial of Chamberlin's motion to dismiss the indictment on this basis as well.

### C. Exculpatory Material

Finally, Chamberlin seeks to dismiss the indictment on the basis that exculpatory material was not provided to the grand jury. (Docket # 15). Specifically, Chamberlin contends

9

that the grand jury should have been provided with the report of his expert that opines that no evidence existed that Chamberlin knowingly possessed images of child pornography. (*Id*. at ¶ 104). This contention is without merit. It is well-established that "neither in this country nor in England has the suspect under investigation by the grand jury ever been thought to have a right to testify or to have exculpatory evidence presented." *United States v. Williams*, 504 U.S. at 52. Accordingly, I also recommend that the district court deny this motion.

II. **Motion to Suppress Physical Evidence**

I turn next to Chamberlin's motion to suppress the evidence that was seized from 10 Cottage Street on the grounds that the search warrant lacked probable cause. First, Chamberlin argues that the issuing judge (the undersigned) should have reviewed the underlying search warrant from the District of New Jersey that was referenced in Knight's affidavit and that the judge's failure to do so invalidates the warrant. Second, Chamberlin contends that the search warrant application did not adequately establish probable cause to believe that he or his computer had viewed the illegal images. Specifically, Chamberlin contends that probable cause was lacking due to the possibility that another person could have viewed the illegal images using Chamberlin's IP address.[4]

---

[4] Chamberlin also challenges Knight's characterization of the images as child pornography, arguing that "there is no basis contained in the [a]ffidavit to lead one to believe that these are, in fact, children." (Docket # 15 at ¶ 19). Chamberlin's argument, however, is directed towards the description of the videos on the Visiblelight website that were viewed by investigating agents. (*Id*. at ¶¶ 17-18, 20). Those videos were not the basis for the subject search warrant, but were instead the basis for the pen register and trap and trace order. (*See* Docket # 25). Chamberlin does not have standing to challenge that order. *See Rakas v. Illinois*, 439 U.S. 128, 143 (1978).

In any event, Knight's affidavit sufficiently establishes that the images viewed by the IP address registered to Chamberlin constitute child pornography. Child pornography is defined as "any visual depiction" of a minor "engaging in sexually explicit conduct." 18 U.S.C. § 2256(8). "Sexually explicit conduct," in turn, is defined as sexual intercourse, bestiality, masturbation, sadistic or masochistic abuse, or "lascivious exhibition of the genitals."

The Fourth Amendment to the Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV; *see also* Fed. R. Crim. P. 41. In *Illinois v. Gates*, 462 U.S. 213 (1983), the Supreme Court affirmed the "totality of the circumstances" test to determine whether a search warrant satisfies the Fourth Amendment's probable cause requirement. According to the Court, the issuing judicial officer must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238. A reviewing court's obligation is merely to determine that the issuing judge had a "'substantial basis for...conclud[ing]' that probable cause existed." *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993) (quoting *Illinois v. Gates*, 462 U.S. at 238-39) (internal quotation omitted). Moreover, "resolution of doubtful or marginal cases ... should be largely determined by the preference to be accorded to warrants." *Id.* (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)) (internal quotation omitted).

---

18 U.S.C. § 2256(2). Knight described at least one image that was viewed by Chamberlin's IP address as a visual depiction of a "young child inserting an object into the vagina of an adult female." (Knight Aff. at ¶ 27). Other images are described as depictions of prepubescent females exposing their genitalia. I find that these factual descriptions are sufficient to establish that the images meet the statutory definition of "child pornography." *Compare United States v. Bonczek*, 2008 WL 4615853, *11 (S.D.N.Y. 2008) (probable cause existed for search warrant where affidavit described images depicting children between two and seven years of age "'with genitalia exposed' and 'posed in a sexually explicit manner'") *with United States v. Genin*, 594 F. Supp. 2d 412, 423-24 (S.D.N.Y. 2009) (no probable cause for warrant where affidavit contained only a conclusory statement that videos contained child pornography). *See also United States v. Battershell*, 457 F.3d 1048, 1053 (9th Cir. 2006) (photograph described as depicting a "young female having sexual intercourse with an adult male" provided probable cause for a search warrant; "[e]laborate and detailed descriptions are unnecessary because '[a]ny rational adult person can recognize sexually explicit conduct engaged in by children under the age of 16 when he sees it'") (quoting *United States v. Hurt*, 808 F.2d 707, 708 (9th Cir. 1987), *amending* 795 F.2d 765 (1986)).

11

Upon review, I find that Knight's affidavit adequately established probable cause to search 10 Cottage Street for child pornography.[5] Knight extensively detailed the FBI's investigation of the Visiblelight website. As the affidavit described, records seized pursuant to the District of New Jersey search warrant revealed that the Visiblelight website's owner operated several websites that promoted and offered for sale images and videos of child pornography. As part of that investigation, FBI agents compiled information detailing dates and times that particular IP addresses had accessed those websites and which images those users had accessed. Relevant to this prosecution, the agents determined that the IP address 65.37.37.132 had visited specific webpages containing thumbnail images of child pornography and, in some cases, had accessed the same images on multiple occasions. Agents further determined that the IP address had been assigned to internet service provided to Chamberlin at 10 Cottage Street and that a car registered to Chamberlin was parked in the driveway of 10 Cottage Street. Knight opined, based upon his training and experience, that the manner in which the user had viewed the thumbnail images indicated the user's intent to download and save those images.

Considering the totality of the circumstances, the affidavit provides ample probable cause to believe that evidence of offenses involving child pornography would be found at 10 Cottage Street, Apartment 1. Although the application did not include allegations that the user of the IP address associated with Chamberlin's address had downloaded or saved any images of child pornography to his computer, it detailed numerous occasions on which that IP

---

[5] Chamberlin contends that his challenge to the probable cause for the warrant should be considered by the district judge because the undersigned signed the search warrant. (Docket # 15 at ¶¶ 13-14). Of course, Chamberlin will have the opportunity to file objections with the district judge to any findings I make in the instant Report and Recommendation, 28 U.S.C. § 636(b)(1)(C), and the district judge will then conduct a de novo review of my recommendations. *Id*. For this reason, I see no need to defer consideration of this issue to the district court.

address had viewed or accessed images of child pornography through the Visiblelight and Dreamhosters websites. This activity occurred between the period December 2007 and February 2008 and involved multiple visits to some of the images. Such evidence, in my estimation, is adequate to support a probable cause showing. *See*, *e.g.*, *United States v. Martin*, 426 F.3d 68, 77 (2d Cir.) (probable cause established for search of residence of individual who was a member of an email group whose purpose was to trade pornography; "those who view [child pornography] are likely to download and store child pornography"), *reh'g en banc denied*, 430 F.3d 73 (2d Cir. 2005), *cert. denied*, 547 U.S. 1192 (2006).[6] *See also United States v. Falso*, 544 F.3d 110, 121 (2d Cir. 2008) (no probable cause for search warrant where affidavit failed to allege that defendant "accessed, viewed or downloaded child pornography"), *cert. denied*, 130 S. Ct. 154 (2009).

I find unpersuasive Chamberlin's argument that the search warrant application lacked probable cause because of the possibility that another person or computer could have gained access to the internet using Chamberlin's IP address. Numerous courts "have held that evidence that the user of a computer employing a particular IP address possessed or transmitted child pornography can support a search warrant for the physical premises linked to that IP address." *United States v. Vosburgh*, __ F.3d __ , 2010 WL 1542340, *10 (3d Cir. 2010) (citing *United States v. Perez*, 484 F.3d 735 (5th Cir.), *cert. denied*, 552 U.S. 952 (2007)). *See also United States v. Stults*, 575 F.3d 834, 843-44 (8th Cir. 2009), *cert. denied*, 130 S. Ct. 1309 (2010); *United States v. Perrine*, 518 F.3d 1196, 1204-1205 (10th Cir. 2008); *United States v.*

---

[6] *But see United States v. Coreas*, 419 F.3d 151, 159 (2d Cir.) (opining that *Martin* was wrongly decided but adhering to it as precedent), *reh'g en banc denied*, 430 F.3d 73 (2d Cir. 2005), *cert. denied*, 547 U.S. 1192 (2006).

*Wagers*, 452 F.3d 534, 539 (6th Cir.), *cert. denied*, 549 U.S. 1032 (2006); *United States v. Hay*, 231 F.3d 630, 635-36 (9th Cir. 2000), *cert. denied*, 534 U.S. 858 (2001). Moreover, "[a] finding of probable cause is based on probabilities, and need not rise to the level of a virtual certainty." *United States v. Benedict*, 104 F. Supp. 2d 175, 181 (W.D.N.Y. 2000) (citing *Illinois v. Gates*, 462 U.S. at 231). Accordingly, even if Knight's affidavit did not prove definitively that Chamberlin was the user who had viewed the pornographic images, it was reasonable to assume that the address associated with the IP address was responsible for activity connected to that IP address; probable cause thus existed that evidence of criminal activity would be found at that address.

        I also reject Chamberlin's contention that the warrant should not have issued because the judge did not review the District of New Jersey search warrant referenced in Knight's application. Significantly, Chamberlin does not argue that Knight's description of the warrant in his affidavit was false or misleading. Rather, he simply maintains that the issuing judge was obligated to read the actual warrant itself, rather than rely on the applicant's description of it, as well as the warrant's supporting affidavit. Chamberlin has cited no authority in support of this contention, and this Court has found none. This Court perceives no reason why a reviewing magistrate should be required to review every warrant or court order, or supporting affidavit, referenced in a warrant application in the absence of either the applicant's incorporation into the pending application of the allegations contained in the earlier warrant application or evidence to suggest that the applicant's description of the earlier warrant is unreliable. Neither exists here.

In any event, Chamberlin has offered no evidence to suggest that the searching officers did not rely upon the warrant in good faith. *See United States v. Leon*, 468 U.S. 897 (1984). Neither has Chamberlin suggested that the undersigned was knowingly misled or wholly abandoned her judicial role in issuing the warrant. *See id.* at 923. Nor was the warrant so facially deficient or so lacking in probable cause that reliance upon it would have been unreasonable. *See id.*; *United States v. Cancelmo*, 64 F.3d 804, 807 (2d Cir. 1995) (citations omitted).

Accordingly, for the reasons stated above, I recommend that the district court deny Chamberlin's motion to suppress evidence seized from his residence.

## III. Suppress Statements

Finally, Chamberlin moves to suppress statements he made in response to questions posed by Agent Knight during the execution of the search warrant for his residence on December 11, 2008. According to Chamberlin, those statements were obtained in violation of his Fifth Amendment rights because he was a "target" of an investigation and was never advised of his *Miranda* rights. (Docket # 15).

In *Miranda*, the United States Supreme Court held that the government may not use a defendant's statements that are the product of custodial interrogation unless it demonstrates that the defendant was first warned of his Fifth Amendment privilege against self-incrimination and then voluntarily waived that privilege. *Miranda v. Arizona*, 384 U.S. 436 (1966). As the Second Circuit Court has articulated,

> [c]ustodial interrogation exists when a law enforcement official questions an individual and that questioning was (1) conducted in custodial settings that have inherently coercive pressures that tend to undermine the individual's will to resist and to compel him to speak (the in custody requirement) and (2) when the inquiry is conducted by officers who are aware of the potentially incriminating nature of the disclosures sought (the investigative intent requirement).

*United States v. Rodriguez*, 356 F.3d 254, 258 (2d Cir. 2004) (quoting *United States v. Morales*, 834 F.2d 35, 38 (2d Cir. 1987) (internal citations omitted)).

In determining whether a defendant was in custody, a court must undertake a two-part analysis. First, the court must ask "whether a reasonable person would have thought he was free to leave the police encounter at issue." *United States v. Newton*, 369 F.3d 659, 672 (2d Cir.), *cert. denied*, 543 U.S. 947 (2004). If the answer is affirmative, the inquiry concludes. *Id.* If, however, the reasonable person would not have felt free to leave, the Court must then proceed to the second step of the analysis and determine whether, in addition to feeling not free to leave, the "reasonable person would have understood his freedom of action to have been curtailed to a degree associated with formal arrest." *Id.* (citing *California v. Beheler*, 463 U.S. 1121, 1125 (1983)). "Only if the answer to this second question is yes was the person 'in custody for practical purposes' and 'entitled to the full panoply of protections prescribed by *Miranda*.'" *Id.* (quoting *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984)); *see United States v. Mitchell*, 966 F.2d 92, 98 (2d Cir. 1992) ("[d]ecisions in this circuit have emphasized that in the absence of actual arrest, an interrogation is not 'custodial' unless the authorities affirmatively convey the message that the defendant is not free to leave").

In this case, I find that before the interview commenced, Knight advised Chamberlin that he did not have to speak to the agents and that he was free to leave; Chamberlin responded that he understood. Nothing about the circumstances of the interview would have led a reasonable person in Chamberlin's position to question his freedom to terminate the interview and leave the premises. He was questioned in his home; he was not handcuffed or otherwise restrained; the agents were not positioned between him and the front door; the agents never physically or verbally threatened him; and, Chamberlin was not intoxicated or confused.

On this record, I find that a reasonable person in Chamberlin's position would not have believed himself to be in custody. *See United States v. Newton*, 369 F.3d at 672; *United States v. Benedict*, 104 F. Supp. 2d at 178-79 (statements made by defendant during execution of search warrant in his home were admissible despite absence of *Miranda* warnings because defendant not in custody); *see also United States v. Mitchell*, 966 F.2d at 99 ("[i]t is similarly clear that [defendant] was not in custody during his interview[, which] occurred in the familiar surroundings of [his] home"); *United States v. Salvo*, 133 F.3d 943, 950-53 (6th Cir.) (defendant not in custody during questioning in his college dormitory concerning possession of child pornography), *cert. denied*, 523 U.S. 1122 (1998); *United States v. Dornhofer*, 859 F.2d 1195, 1200 (4th Cir. 1988) (questioning of defendant during search of his apartment for child pornography did not constitute custodial interrogation), *cert. denied*, 490 U.S. 1005 (1989). Accordingly, I find that at the time Chamberlin made the challenged statements, he was not subject to custodial interrogation and therefore *Miranda* warnings were not required.

Chamberlin's contention that *Miranda* warnings were required because he was a target of the investigation is equally unavailing. In *Beckwith v. United States*, the Supreme Court

17

rejected the argument that *Miranda* warnings are necessary before a non-custodial interview with an individual who is the "focus" of an investigation. 425 U.S. 341, 347 (1976). The Court reasoned that "[i]t was the compulsive aspect of the custodial interrogation, and not the strength or content of the government's suspicions at the time of the questioning was conducted, which led the court to impose the *Miranda* requirements with regard to custodial questioning." *Id*. at 346-47 (quoting *United States v. Caiello*, 420 F.2d 471, 473 (2d Cir. 1969), *cert. denied*, 397 U.S. 1039 (1970)). Having found that Chamberlin was not in custody during the interview with Knight and Couch, it is immaterial whether Chamberlin was a target of their investigation at that time.

Accordingly, I recommend that the district court deny Chamberlin's motion to suppress statements.

## **CONCLUSION**

For the foregoing reasons, I recommend that the district court deny Chamberlin's motions to dismiss the indictment and to suppress statements and physical evidence. (Docket ## 15, 25).

                                                  *s/Marian W. Payson*
                                                  MARIAN W. PAYSON
                                               United States Magistrate Judge

Dated: Rochester, New York
       May   12  , 2010

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York.[7]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

                                          *s/Marian W. Payson*
                                            MARIAN W. PAYSON
                                            United States Magistrate Judge

Dated: Rochester, New York
        May   12  , 2010

---

[7] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).